**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| BRANDON STONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-01193-TWP-DML |
| ) | |
| WHITNEY COUCH, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on a Motion for Summary Judgement filed by Defendant Whitney Couch ("Sgt. Couch"), (Dkt. 99). Plaintiff Brandon Stone ("Mr. Stone") initiated this action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to cruel and unusual punishment following a cell extraction while confined at the Correctional Industrial Facility ("CIF"). (Dkt. 6.) Mr. Stone alleges that during the cell extraction he was sprayed with a chemical agent and thereafter Sgt. Couch violated his Eighth Amendment rights. For the reasons explained below, Sgt. Couch is entitled to qualified immunity, and her Motion for Summary Judgment is **granted**.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). On summary judgment, a party must show evidence that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment

if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).

To survive a motion for summary judgment, the non-moving party must set forth specific admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Not every factual dispute between the parties will prevent summary judgment, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II. MATERIAL FACTS

The following statement of facts has been evaluated pursuant to the standard set forth above. The facts are considered undisputed except to the extent that disputes of fact are noted.

At all times relevant to his Amended Complaint, Mr. Stone was an inmate and Whitney Couch was a Correctional Sergeant at CIF. (Dkt. 6 at 2; Dkt. 99-1, ¶ 2.) On September 6, 2018, Sgt. Couch conducted a compliance search of Mr. Stone's cell and "removed a radio, extra blankets, and razors[.]" (Dkt. 99-1, ¶ 4.) Following the search, Mr. Stone "was not in compliance with the rules and regulations" because he covered the window to his cell with his jumpsuit. (Dkt. 6 at 2; Dkt. 99-1, ¶ 5.) Sgt. Couch ordered Mr. Stone to remove the jumpsuit from his window, and he refused. Sgt. Couch warned Mr. Stone that the cell extraction team would be utilized to remove him from his cell if he failed to comply. (Dkt. 99-1, ¶ 6.)

The cell extraction team gave Mr. Stone an order to uncover his window and to submit to mechanical restraints, but Mr. Stone refused this order. (Dkt. 6 at 2; Dkt. 99-1, ¶ 8.) The cell extraction team then administered two or three one-second bursts of oleoresin capsicum ("OC") spray into Mr. Stone's cell. (Dkt. 6 at 2; Dkt. 99-1, ¶ 9; Dkt. 101 at 2.) Approximately ten minutes later, Mr. Stone complied with the cell extraction team's orders and submitted to mechanical restraints. (Dkt. 6 at 2; Dkt. 99-1, ¶ 10.)

Mr. Stone was read the OC Administrative Warning. (Dkt. 99-1, ¶ 11; *see also* Dkt. 99-2.) Mr. Stone was given a decontamination shower. Mr. Stone, however, states that the shower was less than two minutes and that his hands were cuffed behind his back during the shower. (Dkt. 6 at 3; Dkt. 99-1, ¶ 12; Dkt. 111-7.) Mr. Stone was assessed by a registered nurse shortly after the incident. (Dkt. 99-3.) Mr. Stone's mattress and belongings were removed from his cell, and Sgt. Couch returned Mr. Stone to his cell. (Dkt. 99-1, ¶ 14.) Mr. Stone was placed on "strip cell" status, which means that he was only "allowed to have his boxers, t-shirt, and socks while in the cell." *Id.*, ¶15. Mr. Stone "was given a mattress, sheet, and blanket in the evening, which had to be returned in the morning." *Id.*

In his affidavit, Mr. Stone testified that "3.15 ounces of OCV Mark 90 spray" was "dispersed all throughout" his cell, none of it was cleaned, and he was left "to burn for 72 hours". (Dkt. 111-7 at 1.) He further testified that he was held in full mechanical restraints for 5 hours, and he was denied access to cleaning supplies to decontaminate his cell. *Id.* He testified that despite his requests for help to alleviate his pain, Sgt. Couch only laughed. *Id.* at 2. Mr. Stone provides declarations from other inmate witnesses to support the allegations in his Amended Complaint— that he was restrained for several hours in "trip gear," that he requested clean boxers because his were soaked with the OC spray, and that he requested his cell be cleaned or to be provided with the supplies to clean it, but Sgt. Couch and other officers denied those requests. (Dkt. 111-2; Dkt. 111-3; Dkt. 111-4.) Mr. Stone testified that "[a]ll this [coupled] with an inten[s]e burning sensation all over [his] body including [his] privates [was] made worse by the improper decontamination shower" of "23 seconds." (Dkt. 111-7 at 1.)

Sgt. Couch's declaration and the OC Administrative Warning indicated that the OC spray used on Mr. Stone "was an air-drying chemical which would dissipate over time", and that "OC is non-toxic and the effects will dissipate in a short time." (Dkt. 99-1, ¶ 16; Dkt. 99-2.)

### III.  DISCUSSION

#### A.  Eighth Amendment

Mr. Stone alleges that after he received a brief decontamination shower, he was returned to his contaminated cell where he was forced to remain in his wet, pepper-sprayed boxers and mechanical restraints for several hours. Despite his requests, Defendant Sgt. Couch did not provide him with a fresh pair of boxers, remove his mechanical restraints, or clean his cell. Mr.

4

(Dkt. 6 at 3.) Stone alleges that these circumstances were a violation of his Eighth Amendment Constitutional rights.

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citation and internal quotations omitted). Pursuant to the Eighth Amendment, prison officials have the duty to provide humane conditions of confinement: "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation omitted). To succeed on a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must demonstrate that 1) he was incarcerated under conditions that posed a substantial risk of objectively serious harm, and 2) the defendants were deliberately indifferent to that risk, meaning they were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (citing cases).

The objective showing requires "that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (internal quotation omitted). "According to the Supreme Court, … 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and [t]o the extent that such conditions are restrictive and even harsh, they are

5

part of the penalty that criminal offenders pay for their offenses against society." *Id*. (internal quotation omitted).

After showing the objective component, a plaintiff must next establish "a subjective showing of a defendant's culpable state of mind," and "the state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Id.* (internal quotation omitted). In addition, negligence or even gross negligence is not sufficient to support a § 1983 claim. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018).

In this case, Sgt. Couch is allegedly responsible for Mr. Stone spending approximately five hours following his brief decontamination shower in a cell that was not cleaned, wearing wet boxers and mechanical restraints. During this time, Mr. Stone experienced pain and discomfort. Sgt. Couch argues that she did not violate Mr. Stone's Eighth Amendment rights, and that she is entitled to qualified immunity. (Dkt. 99.)

**B.    Qualified Immunity**

Mr. Stone alleges that Sgt. Couch violated his Eighth Amendment rights when she left him in restraints for hours and denied him clean boxers and further decontamination procedures. Sgt. Couch argues that she did not violate Mr. Stone's Eighth Amendment rights and that she is entitled to qualified immunity even if the "Court finds that there could have been" a constitutional violation. (Dkt. 101 at 6.)

"Qualified immunity 'protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Taylor v. City of Milford*, -- F. 4th --, No. 20-1109, 2021 WL 3673235, at *3 (7th Cir. Aug. 19, 2021) (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)). To overcome an assertion of qualified immunity, a plaintiff must show that "(1) the

defendant violated a constitutional right, and (2) that [the] right was clearly established at the time of the alleged violation." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). In other words, qualified immunity is appropriate when the clearly established law, as applied to the facts, "would have left objectively reasonable officials in a state of uncertainty." *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (district court may bypass question of whether constitutional violation occurred and address the "clearly established" prong first.).

"For the law to be clearly established, the 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Determining whether a state actor violates clearly established law requires a look at past cases with specificity. *Id.* at 988. "The Supreme Court has time and again instructed lower courts 'not to define clearly established law at a high level of generality.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). A violation is only "clearly established where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution." *Siebert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001). In *Plumhoff v. Rickard*, the United States Supreme Court held that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." 572 U.S. 765, 778-79 (2014).

### 1. Use of Force

First, Sgt. Couch argues that "[i]t is not clearly established that a correctional employee may not use a short burst of chemical spray to subdue a recalcitrant prisoner." (Dkt. 101 at 7.)

7

However, it is not the *use* of the chemical agent that is the basis of the constitutional violation in question. As Mr. Stone responds in opposition: "The basis of the constitutional violations that took place pertain to what was done *after* the use of force." (Dkt. 111 at 10 (emphasis added).) The Court agrees. The Order screening Mr. Stone's Amended Complaint explained that the allegations set forth by Mr. Stone involve the brief decontamination shower while he was handcuffed, his being forced to sit in a still-contaminated cell in mechanical restraints, and his being forced to sit in wet, pepper-sprayed boxers. (Dkt. 8 at 2.) It is undisputed that Mr. Stone was noncompliant by covering his cell window, and that he refused to submit to orders such that the cell extraction team was invoked, and a chemical agent was used to gain his compliance. Sgt. Couch's actions in permitting the use of OC spray is not at issue here. Thus, the Court **rejects** Sgt. Couch's qualified immunity defense as unnecessary as it relates to the use of the chemical agent against Mr. Stone.

### 2. Decontamination

Next, Sgt. Couch argues that it is not clearly established that an offender must have subsequent opportunities to wash his body after a decontamination shower, "[n]or is it clearly established that any other decontamination is necessary for the air-drying OCV chemical." (Dkt. 101 at 7-8.)

It is Mr. Stone's burden to demonstrate a violation of a clearly established right. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). In establishing that the right that was violated was clearly established at the time, Mr. Stone is not required to rely on a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam). In effect, he must demonstrate that

he was entitled to clean boxers, a longer decontamination shower or a subsequent shower, and to have his cell decontaminated. He is unable to meet this burden.

In support, Mr. Stone points to the Indiana Department of Correction Disciplinary Restrictive Status Housing policy which states that inmates shall be housed in "[a] clean, healthy, safe, and secure environment for offenders and staff[.]" (Dkt. 111-6.) However, a violation of policy by itself is insufficient to establish a constitutional violation. "Section 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

It is undisputed that Mr. Stone received a brief decontamination shower. It is also undisputed that he was evaluated by a registered nurse shortly after the incident and prior to returning to his cell. Mr. Stone has not pointed to any authority in the Seventh Circuit or the Supreme Court that establishes that he was entitled to decontamination measures beyond what he received after exposure to the OC spray. Given Mr. Stone's *pro se* status, the Court reviewed whether such authority exists, but it has found no such support that meets this burden.[1] Given the

---

[1] Mr. Stone provides a number of case citations, but those even remotely related to decontamination procedures, or mechanical restraints even, are not Seventh Circuit or Supreme Court case law, and all are distinguishable from the facts in this case. (*See* Dkt. 111 at 1-12.) For example, Mr. Stone cites the following:

> *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996) (reversed and remanded for further proceedings the district court's order "granting summary judgment on Williams' claim that the officers violated the Eighth Amendment by **retaining him in four-point restraints in a mace-filled cell for eight hours**, **without allowing him to wash off the mace or providing him with any medical care**, or even the use of a toilet.") (emphasis added); *Sadler v. Young*, 325 F. Supp. 2d 689 (W.D. Va. 2004) (inmate who was **tied to a bed for two days** was granted summary judgment as to liability of certain defendants) (emphasis added); *Blake v. Hall*, 668 F.2d 52 (1st Cir. 1981) (**confinement in dungeon for 30 days without light or ventilation** may be cruel and unusual punishment but this section of confinement was to be closed, remanded to determine whether this section of confinement would continue to be used) (emphasis added); *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985) (inadequate lighting, plumbing, vermin infestation, fire safety, ventilation and air flow, safety hazards in prison violated minimum requirements of Eighth Amendment); *Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1982) (plaintiff must demonstrate personal involvement of defendant under Section 1983); *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) (quoting *Conner v. Reinhard*, 847

facts in Mr. Stone's case, the Court cannot say that *only* someone "plainly incompetent" or who "knowingly violate[s] the law" would have perceived that deprivation of further decontamination measures beyond a shower and timely medical evaluation violates an inmate's Eighth Amendment rights.  In other words, not every reasonable officer understood that following the administration of OC spray, an air-drying chemical agent that dissipates, a prisoner is entitled to clean clothing, a longer or subsequent decontamination shower, and/or the ability to clean the cell.

### 3. Lingering Pain

Mr. Stone's testimony that he experienced a painful burning sensation as a result of the OC spray does not change the Court's conclusion.  In his affidavit, Mr. Stone testified that because these extra decontamination procedures were not taken, he experienced a burning sensation for 72 hours, "all because defendant [Sgt.] Couch chose to set in motion a series of events by denying [him] access to cleaning supplies or to have custody decontaminate [his] cell despite [his] pleas to [Sgt.] Couch for help to alleviate [his] pain, to which she laughed!"  (Dkt. 111-7 at 2 (cleaned up).) However, there is no evidence in the summary judgment record that Sgt. Couch had any interaction with Mr. Stone beyond the cell extraction and her return to his cell five hours later when his mechanical restraints were removed.  There is no evidence that she was personally aware that Mr. Stone continued to experience a painful burning sensation for three days after the incident.  Because Sgt. Couch can only be liable for the actions or omissions in which she personally

---

F.2d 384 (7th Cir. 1988), *cert denied*, 488 U.S. 856 (1988) (defendant who sets in motion a series of events he knew or reasonably should know would cause others to deprive plaintiff of constitutional rights satisfies causal connection under Section 1983)); *Clement v. Gomez*, 298 F.3d 898 (9th Cir. 2002) (**qualified immunity defense rejected** due to issues of fact that precluded summary judgment **on deliberate indifference claims of bystander inmates who experienced effects of pepper spray that drifted into their cells** after officers used the spray to break up a nearby fight and **were denied showers or medical attention for 4 hours**) (emphasis added); *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976) (prison officials cannot be deliberately indifferent to medical needs of prisoners by denying, delaying, or intentionally interfering with medical treatment)).

participated, any ongoing injury of which she was unaware does not subject her to liability. *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017).

In addition, taking the facts in the light most favorable to Mr. Stone, a dismissal of his discomfort with laughter could certainly be unsympathetic or unprofessional conduct. However, it is undisputed that Mr. Stone received timely attention to respond to his discomfort with a decontamination shower and a medical assessment. As the Court has discussed, no evidence has been presented that Mr. Stone was entitled to additional measures. To the contrary, "courts have routinely held that the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions." *Buchanan v. Pfister*, No. 17-CV-8075, 2018 WL 4699778, at *7 (N.D. Ill. Oct. 1, 2018) (collecting cases); *Rivera v. MacAdory*, No. 96 CV 4674, 1997 WL 17811, at *3 (N.D. Ill. Jan. 16, 1997) (explaining that plaintiff and fellow prisoners were able to wash themselves after exposure, "it is unclear what additional remedies could have been given," and the "lingering unpleasant effects of the mace" after washing eyes and face is not a "serious medical need"); *Trotter v. Kingston*, No. 05 CV 1032, 2007 WL 984089, at *6 (E.D. Wis. Mar. 27, 2007) (on summary judgment "the injuries of which [plaintiff] complains in the wake of [being indirectly exposed to pepper spray]—shortness of breath, difficulty in breathing, nausea, and tightness in the chest—are, objectively speaking, relatively minor" and not constitutionally actionable.).

Accordingly, Mr. Stone's testimony that he was in lingering pain after OC spray exposure, and Sgt. Couch did not assist him to help alleviate that pain, does not change the Court's determination that Sgt. Couch is entitled to qualified immunity regarding his decontamination claims, discussed above.

    **4.**    **Mechanical Restraints**

Mr. Stone testified in his affidavit and provided evidentiary support in the form of witness declarations that he was kept in mechanical restraints while in his cell for several hours following the cell extraction. The use of mechanical restraints was not specifically addressed by the parties, but this fact does not change the qualified immunity analysis. (Dkt. 111-7; *see also* Dkts. 111-2; 111-3; 111-4.)

Though being subjected to mechanical restraints is unpleasant or uncomfortable, Mr. Stone's situation does not establish that he "suffered a sufficiently serious constitutional deprivation which must be 'extreme' to be actionable" under the Eighth Amendment. *See, e.g., Cunningham v. Eyman*, 17 F. App'x 449, 453 (7th Cir. 2001) (Eighth Amendment not implicated when inmate spent "16 hours in shackles and four to five hours in soiled clothing"). Allegations that an inmate is put in a cell "with no running water, mattress, blankets or clothing, and later ordered that he be physically restrained for several hours without clothing" alone are insufficient to sustain an Eighth Amendment claim. *See Young v. Schwenn*, 2021 WL 3662906, at *3-*4 (W.D. Wis. Aug. 18, 2021) (summary judgment denied due to *more severe* allegations that inmate was denied water for multiple days and had to drink toilet water due to dehydration) (emphasis added). The Seventh Circuit has "allowed Eighth Amendment claims involving similar conditions to proceed to trial only if they involved deprivations that lasted for longer time periods and also subjected the prisoner to temperature extremes or unsanitary conditions." *Id.* at *4 (citing examples including *Townsend,* 759 F.3d at 687 (prisoner was "completely naked, with no clothing, shoes, bedding, linens, mattress, or legal materials" for periods totaling 259 days)).

Mr. Stone was restrained after a cell extraction, where it is undisputed that he violated Sgt. Couch's orders and the orders of the cell extraction team. OC spray was administered in order to gain his compliance, and five hours after the incident, the restraints were removed.

Accordingly, no reasonable juror could find that Mr. Stone has established that his placement in mechanical restraints after the cell extraction was "sufficiently serious" whether considered alone or in combination with the other circumstances he faced. As a result, there was no constitutional violation, and Sgt. Couch is entitled qualified immunity.

### IV. <u>CONCLUSION</u>

Defendant Whitney Couch is entitled to qualified immunity and her Motion for Summary Judgment, Dkt. [99], is **GRANTED**.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 9/17/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brandon Stone, #254703
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
New Castle, Indiana  47362

Michael J. Blinn
INDIANA ATTORNEY GENERAL'S OFFICE
michael.blinn@atg.in.gov

Samantha May Sumcad
INDIANA ATTORNEY GENERAL'S OFFICE
samantha.sumcad@atg.in.gov